**U.S. BANKRUPTCY COURT**
**District of South Carolina**

Case Number: **15-03320-jw**

### ORDER ON APPLICABILITY OF AUTOMATIC STAY

The relief set forth on the following pages, for a total of 8 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**07/22/2015**



*/s/ John E. Waites*

US Bankruptcy Judge
District of South Carolina

Entered: 07/23/2015

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE: | C/A No. 15-03320-JW |
| | Chapter 13 |
| Gary L. Legette, | **ORDER** |
| Debtor(s). | |

This matter comes before the Court on the Motion for an Order Providing that the Automatic Stay Does Not Apply or, in the Alternative, for Relief from the Automatic Stay ("Motion") filed by South Carolina Federal Credit Union ("SCFCU"). The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Pursuant to Federal Rule of Civil Procedure 52, which is made applicable to this contested matter by Federal Rules of Bankruptcy Procedure 7052 and 9014(c), the Court makes the following findings of fact and conclusions of law.[1]

**FINDINGS OF FACT**

1. On June 23, 2015, Gary L. Legette ("Debtor") filed with this Court a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. Debtor filed this petition in his individual capacity.

2. Debtor is the sole member of Eastcoast Transmission & Auto Repair, LLC ("ETAR"). At the time of the hearing on SCFCU's Motion, ETAR remained a properly registered corporate entity with the South Carolina Secretary of State. ETAR is not a debtor in this case and has not filed for relief under any chapter of the Bankruptcy Code to date.

---

[1] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent any of the following conclusions of law constitute findings of fact, they are so adopted.

1

3. Prior to Debtor's individual bankruptcy filing, ETAR, through Debtor as its sole member, executed and delivered to SCFCU a written promissory note dated December 3, 2007 in the original principal amount of $360,000.00, together with interest ("Note"). On or about the same date, ETAR, again through Debtor as its sole member, executed and delivered to SCFCU a mortgage ("Mortgage") which conveyed to SCFCU the lot of land and building(s) thereon where ETAR conducts its business ("Property"). The Mortgage was duly witnessed, probated, and recorded on December 4, 2007.

4. On or about December 3, 2007, ETAR executed and delivered to SCFCU an Assignment of Leases and Rents to further secure payment on the Note. Additionally, on or around that same date, for further security on the payment of the Note and as additional consideration for the loan, Debtor executed and delivered to SCFCU for value a guaranty under which Debtor promised payment and performance of all obligations under the Note to SCFCU ("Guaranty").

5. Following the foregoing conveyances but prior to Debtor's individual bankruptcy filing, ETAR defaulted under the terms of the Note and Mortgage. As a result, SCFCU commenced state court foreclosure proceedings against ETAR in Berkeley County, South Carolina ("Foreclosure Action"). In the Foreclosure Action, SCFCU sought foreclosure of the Mortgage, sale of the Property, and deficiency judgments against ETAR and Debtor (pursuant to the Note and Guaranty, respectively).

6. On May 5, 2015, following a hearing on the merits, the state court through a Master's Decree entered a judgment of foreclosure with respect to the Property and awarded money judgments against ETAR and Debtor arising from their separate obligations under the Note and Guaranty. The judgments against ETAR and Debtor were subject to reduction following the Property's sale. Per the Master's Decree, the foreclosure sale was thereafter scheduled for July 1,

2

2015 with the sale to reopen for final bidding on July 31, 2015. As noted above, Debtor filed this individual case prior to the Property's scheduled sale date.

7. Although ETAR—the undisputed owner of the Property—is not a debtor in this case and has not filed for relief under any chapter of the Bankruptcy Code, the state court cancelled the foreclosure sale pending further order from this Court.

8. On June 30, 2015, SCFCU filed its Motion seeking clarification from this Court as to the applicability of the automatic stay in Debtor's individual case to the Property in SCFCU's Foreclosure Action against ETAR. The deadline for objections to SCFCU's Motion was set for July 14, 2015.

9. In the absence of a timely objection to the Motion from Debtor or any other interested party, counsel for SCFCU filed on July 20, 2015 at 8:34 A.M. a Certification of Default Regarding Motion for Relief from the Automatic Stay and Request for Order Lifting the Automatic Stay to the extent it applies to ETAR's Property ("Certification of Default"). At 8:58 A.M. on the same day, Debtor then filed his untimely objection to SCFCU's Motion which is captioned as an Answer/Objection to Motion to Relief from Stay and names Green Tree Servicing, LLC (not SCFCU) as the creditor ("Objection"). Debtor's Objection sets forth four unspecific and broad "defenses" to SCFCU's Motion and is accompanied by a Certificate of Facts containing, among other things, a purported valuation of the ETAR Property at $650,000.00 and a declaration of Debtor's estimated equity in this Property at an amount of $260,391.00 after subtracting the Mortgage against it in an amount of $389,609.00.

10. On July 21, 2015, at the hearing on SCFCU's Motion and Debtor's Objection thereto, Debtor argued that the Court should set aside the protections of the corporate veil and view Debtor as the alter ego of ETAR, thereby deeming the Property as property of Debtor's individual

3

bankruptcy estate. By doing so, Debtor argued that the automatic stay would then extend to protect the Property from SCFCU's Foreclosure Action. Debtor's testimony at the hearing included generalized references to his ignorance of applicable statutory law governing ETAR's adherence to certain corporate formalities and repeated declarations that his former spouse (who is not and was never a member of ETAR) controlled the majority of ETAR's finances and business dealings. The overall tenor of Debtor's testimony was that he completed work for ETAR but never received a paycheck or attempted to personally engage in the carrying on of its business despite his role as the LLC's sole member.

## CONCLUSIONS OF LAW

Pursuant to 11 U.S.C. § 362(a)(3),[2] the filing of a bankruptcy petition operates as a stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." "However, the automatic stay does not stay actions against property that is not property of the estate." *In re Brittain*, 435 B.R. 318, 321 (Bankr. D.S.C. 2010) (citing *In re Moore*, 410 B.R. 439, 441 (Bankr. E.D. Va. 2009)). The term "property of the estate" is clearly defined in § 541 as "all legal or equitable interest of the debtor in property as of the commencement of the case." § 541(a)(1). Therefore, the plain language of the Code requires that in order for certain property to be afforded the protections of the automatic stay, it must be shown that the debtor has a legal or equitable interest in such property.

"Although federal law defines what property interests are included within the bankruptcy estate, state law determines the nature and existence of a debtor's property interests." *In re Katzburg*, 326 B.R. 606, 609 (Bankr. D.S.C. 2004); *see, e.g.*, *Butner v. United States*, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law."). The facts here indicate that

---

[2] Further reference to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, shall be by section number only.

ETAR is a limited liability corporation organized under the laws of South Carolina with its principal place of business in South Carolina. Debtor is ETAR's sole member and has requested that this Court disregard ETAR's status as a corporate entity standing separate and apart from Debtor as an individual. "'When a court considers disregarding the corporate entity, i.e., "piercing the corporate veil," the court applies the law of the state of incorporation.'" *Arabi Gin Co. v. Plexus Cotton, Ltd. (In re Joseph Walker & Co.)*, 522 B.R. 165, 188 (Bankr. D.S.C. 2014) (quoting *In re Cambridge Biotech Corp.*, 186 F.3d 1356, 1376 n.11 (Fed. Cir. 1999)). Under applicable South Carolina law, it is clear that "a limited liability company is a legal entity distinct from its members." S.C. Code Ann. § 33–44–201 (1976). The members of a limited liability company "have no property interest in property owned by [the entity]." S.C. Code Ann. § 33–44–501, *cmt.* (1976). Therefore, "[i]t follows that a [LLC] member's bankruptcy estate has no interest in property of an LLC and that the estate's property interest is limited to the member's distributional interest." *Brittain*, 435 B.R. at 322.

At the hearing on SCFCU's Motion, Debtor directed the Court to two cases which he alleges as offering support for the position that the protection of the stay should be extended to ETAR's interest in the Property through application of the alter ego doctrine. Specifically, Debtor referenced *Osborn v. Univ. Med. Assoc. of the Med. Univ. of S.C.*, 278 F. Supp. 2d 720, 727 (D.S.C. 2003) and additional citation thereto by the undersigned in an Order on a Renewed Motion for Summary Judgment and Motion for Summary Judgment in the case of *Grayson Consulting, Inc. v. Wachovia Securities, L.L.C.*, C/A No. 05–15042–JW, Adv. Pro. No. 07–80119–JW, slip op. (Bankr. D.S.C. Sept. 14, 2010). "This [alter ego] doctrine is but a variation of the 'piercing the corporate veil' principle, in which a court may in certain instances disregard the corporate device of limited liability where it has been misused by its owners." *Osborn*, 278 F. Supp. 2d at 726.

5

Debtor's position, as advanced at the hearing but not clearly set forth in his untimely Objection, can be effectively summarized as follows: As a result of Debtor's personal misunderstanding of the functions of ETAR as a limited liability company and the corporate formalities to which it is required to adhere, Debtor requests that the Court permit him to utilize his ignorance of the applicable laws under which ETAR was formally organized as a shield to protect ETAR's Property from foreclosure subsequent to its default on payments due to SCFCU under the Note. Essentially, Debtor argues that because of his *lack* of control over ETAR and its corporate activities, the Court should view him as its alter ego and deem ETAR's interest in the Property as property of Debtor's individual bankruptcy estate.

Contrary to the logic of Debtor's arguments, the alter ego "theory does not apply in the absence of fraud or misuse of control by the dominant entity which results in some injustice." *Colleton Cnty. Taxpayers Ass'n v. Sch. Dist. of Colleton Cnty.*, 371 S.C. 224, 237, 638 S.E.2d 685, 692 (2006); *see also Baker v. Equitable Leasing Corp.* 275 S.C. 359, 367–68, 271 S.E.2d 596, 600 (1980). The impending "injustice" of which Debtor complains is SCFCU's lawful exercise of its state law remedies against ETAR in the Foreclosure Action based on ETAR's default on the Note. But, the form of injustices against which the alter ego doctrine intends to protect is those brought upon third parties as a result of the fraud or misuse of control perpetuated by a dominant entity (here being ETAR, allegedly) over another entity, or in this case, individual (Debtor). No such factual circumstances exist in this case. ETAR as a corporate entity——not Debtor individually—is liable for the consequences of such a default under the terms of the Note and Mortgage. ETAR is the legal owner of the Property, as evidenced through the conveyance of a deed to ETAR by Debtor, the process of which is documented in the Mortgage and related documents. Debtor, through his function as the sole member of ETAR, has no property interest in any property owned

6

by ETAR, including the Property which is the subject of SCFCU's Foreclosure Action.[3] *See* S.C. Code Ann. § 33–44–501, *cmt.* (1976). In the absence of "a showing of total domination and control of one entity [or individual] by another and inequitable consequences caused thereby," the Court cannot extend the protections of the stay to ETAR's property interests and deem the Property as property of Debtor's individual bankruptcy estate. Therefore, the Court finds that the automatic stay imposed by Debtor's filing of this case does not extend to the corporate Property of ETAR that is the subject of SCFCU's Foreclosure Action.[4]

## CONCLUSION

The Court hereby authorizes the state court to proceed with the sale of the Property in the Foreclosure Action as a result of the finding that ETAR's interest in the Property is not property of Debtor's bankruptcy estate as defined by § 541 and therefore not protected by the automatic stay imposed by § 362. Furthermore, due to Debtor's Objection, though untimely, the Court hereby denies SCFCU's request for waiver of the fourteen (14) day period imposed by Fed. R. Bankr. P. 4001(a)(3). In light of the foregoing, Debtor's untimely Objection to SCFCU's Motion is overruled.

**AND IT IS SO ORDERED.**

---

[3] Although SCFCU seeks a deficiency judgment against Debtor individually in the Foreclosure Action, the basis for doing so is not grounded in Debtor's disregard of ETAR's corporate form but rather in Debtor's personal commitment through the Guaranty discussed above.

[4] The Court notes that Debtor's filing of his Objection after the expiration of the applicable objection period as set forth in the notice associated with SCFCU's Motion constituted a default, thereby allowing SCFCU to file the aforementioned Certification of Default and providing this Court with an additional basis on which to grant the relief requested.

7